Thank you, Your Honor. I'm honored to be here this morning. You may proceed. Good morning. May it please the Court, Counsel, I'm honored to be here today on behalf of the Defendant Appellant, Mr. Shaun Farrington. I'm here today to discuss the three primary ways in which Mr. Farrington was denied a fair trial. First, in the Court's denial of Farrington's motion to strike a juror for cause who exhibited some particularized bias in between Wardeer and the opening of evidence. Second, in the Court's denial of Mr. Farrington's motion to suppress evidence based on the seizure and search of some locked containers found during a traffic stop and then searched after. And third, in the Court's denial of Farrington's motion under Rule of Evidence 106, he requested presenting a longer portion of a recording of himself, and the District Court denied that motion. I'd like to start this morning by discussing the juror issue. So this case proceeded to a jury trial during the height of the pandemic, depending on what we consider the height is at this point. But so there was a unique structure to this. The jury was selected on Monday. Tuesday, nothing happened with the jury. Wednesday was the commencement of the trial. And at some point on Tuesday, a juror came forward via email and said she recognized, she knew why she'd recognized during Wardeer the name Officer Bunch, who was one of the government's witnesses. She said that she'd corresponded with Officer Bunch over the course of about nine months, giving him drug tips, primarily via email, about drug activity happening in the parking lot of her condo complex. She said that eventually the drug activity became so prolific that she had to move to a new home. And she described reviewing all of her emails with Officer Bunch and said that he in particular was the person she was corresponding with. Then, of course, outside of her presence, the court asked counsel what to do. Defense made a motion to strike this juror for cause. And of course, there's no peremptory strikes left. The jury had already been selected, but the jury had said that the trial had not started yet. The court denied this motion pretty summarily, as this body can see from the record. And the district court cited to two cases, United States v. Tucker and United States v. McCaw, and said that those were the appropriate standards. Well, just to say, I think you missed a step there, though. There was a discussion outside the record. And then Judge Jarvie called the juror in and questioned the juror. And it's at that point that he made the ruling. That's correct, Your Honor. So the juror was questioned. Yes. I'm not denying she was questioned. And one of the things that struck me was that there was no attempt, there was no questioning by the defense. Well, actually, I don't think there was questioning by either side other than Judge Jarvie. Why wasn't there any follow-up by either side to Judge Jarvie's questions? If the defense really felt that there was an issue here, why didn't they pursue it, I guess is what I'm asking. I would agree with your assessment on review of the record that that seems like an omission on the part of the defense. But Judge Jarvie's questioning did draw out of this witness all of the information that I've presented to the court today. So certainly, hindsight is talking. And I also wish the defense had asked more questions of this juror. And she does indicate, as to the court's questioning, that she thought she could put this behind her. But the court articulates that the standard is outlined in McCaw and Tucker. That's not the correct standard. That's, of course, for jurors who misrepresent something, who lie during voir dire for whatever reason. The correct standard is articulated in United States v. Wood. And of course, that's about a particularized finding, a particular link between the juror's experience and the facts of the case at bar. In this case, it is a drug offense. It's all about drugs. This woman's life had clearly been harmed by drug trafficking happening near her home. She had a relationship with one of the government's witnesses in our case. And the court should have found that she should be struck. The case could have still proceeded. Why? What's the bias that's shown here? I mean, it seems to me she could have been just as unhappy with Officer Bunch because she ended up having to move. It seems to me just because she's interested in living in a drug-free place doesn't necessarily show bias against your client. I think the potential bias goes in two directions. First, towards Officer Bunch. Certainly, Your Honor could be correct that maybe she felt dissatisfied by Officer Bunch. We don't know. But she has this particularized relationship with him over the course of many months and providing tips, essentially being a tipster to the police about drug activity. And second, about drug activity in general. That she, I mean, it's pretty profound impact on her life to have to move on the basis of drug activity. And her statements to the court indicate that that was the reason that she had to move. So it's twofold in this case. Do you agree that the standard here is whether there was cause to strike the juror? I do agree, Your Honor. So there's nothing you can do about the fact that you didn't have any peremptories left by the time this information came out? That's correct. I just wanted to point out for the court, typically we're seeing- Yeah, I understand you might have struck her. I'm just wondering if you can get any relief on that ground. But you agree that you need to show cause at this stage? I do agree. And I think the Wood standard controls here. And if it had been correctly applied, that she would have been struck. Moving on to the motion to suppress, the court should have granted Farrington's motion to suppress the seizure of the locked containers found in the vehicle in this case. The government would have you think that everything that touches a vehicle falls under CAROL. And the district court seems to go along with that line of reasoning in its rulings that the CAROL doctrine controls anything, any search whose genesis comes from a traffic stop. But we contend to the court today that that's stretching CAROL beyond its limits and that the correct application here would be United States v. Place. In our case, the traffic stop was well over. When these containers, they're seized, they're put into the patrol car, they're moved to a locked facility for hours. They're subject to an additional dog sniff that is a search of constitutional concern. It's not happening at the time of the traffic stop and was inappropriate here. Of course, the court in Place says that keeping the luggage, of course, Place is an airport case, but keeping the luggage for this 90-minute period of time, not letting the defendant know how he will be reinstated to his possessions, and the fact that there was no apparent danger or any other exigent circumstances to get around the warrant requirement would be some of the reasons that the court overturned the conviction in Place. And here, too, at this point, the traffic stop is well over. There's no... Well, do you agree that he could have searched the lockers at the scene of the stop? It presents a different issue, but... Isn't that covered by United States v. Ross? Ross... The probable cause to search the car would let him open the containers? Yes. So you have to be saying that he could have searched them on the scene, but he was not allowed to bring them back to the station and search them later. And why would that be? Why should that be the rule? I think Ross and some of its progeny deal with paper bags, and they deal with... What do they deal with? Particularized, like a bundle of drugs that matches the bundles law enforcement see. And so there's some really particularized facts to point to those containers. I don't know that there's case law authorizing cutting open a locked container under the Carroll Doctrine at the scene. But in this case, we've moved beyond the traffic stop by the time these searches happen. It walks outside of the Carroll Doctrine to seize containers. Clearly, they're not dangerous because the officer places them in his squad car and drives them to this other location. And clearly, the traffic stop is over. They're also not movable at this point. The Carroll Doctrine and its progeny speak to the mobility of an automobile. And these containers aren't going anywhere. This car is not going anywhere. I wonder if there's not a preliminary problem here in the sense of whether your client had standing. As I understand it, he wasn't the registered owner of the car and then disavowed any interest, any ownership interest in these locked containers. So why would he have a reasonable expectation of privacy? Your Honor, we think that Byrd controls here that if the user of a rental car can have standing, even if they're not on the lease, the testimony at this trial and the evidence presented throughout pretrial proceedings indicated that this car was being rented from another person and that my client was the driver of this, not from Enterprise Rent-A-Car, but from another person. And so he would have standing as the driver of the vehicle. And certainly, law enforcement had been surveilling these people for several days at this point. They knew that only these two people had used the vehicle. I just want to touch briefly on the Rule 106 issue before reserving the rest of my time for rebuttal. The defense asked that an additional portion, just a couple minutes additionally, be played of a video recorded call between our client and his co-defendant, Stephanie Goodwin. Rule 106 is a rule of completeness. It helps us avoid taking things out of context. The defendant argued that this additional portion would help contextualize. The government kept playing this little snippet that said, there's a reason them lockboxes were lockboxes. The government leaned heavily on this throughout the trial, opening statement, closing statement, and within its case in chief. But listening to the additional couple of minutes shows the co-defendant's participation in the decision to use lockboxes. And indeed, she testifies at trial that she later uses lockboxes without our client as an MO for her drug dealing operation. And it goes to the defendant's primary strategy at this trial, which was to place blame, the onus of the blame, with Stephanie Goodwin, his co-defendant. Well, if she testified at trial that she used the lockboxes, what's the prejudice of not putting the additional testimony in, if you got it in anyway? We got it in the testimony, but the government used the snippet as essentially a confession from our client. And so to present the additional evidence would have allowed the court, or the trier of fact, the jury, to hear these statements within context. I'd like to reserve my additional time if that's amenable to the court. You may. Thank you for your argument. I'm sorry. All right. Ms. Schneider, we'll hear from you. Thank you, Your Honor. May I remove my mask? You may. Thank you. May it please the court. My name is Tori Schneider, and I represent the United States. There was no error below, and I would like to start with the suppression issue, if that is all right with the court. The district court did not err in denying appellant's motion to suppress. I would like to start with Judge Grinder's issue with standing. Regardless of whether appellant had standing to challenge the search of the vehicle, which arguably he may have, he did not have standing to challenge the search of the lock boxes, which he has continually asserted no interest in, both at the side of the road and in his motion to suppress. Claimed no knowledge of it, no possessory interest in it whatsoever.  He should not have standing to challenge anything regarding the lock boxes at a minimum. But the district court ruled against you on that issue, right? Actually, no, Your Honor. Both the magistrate judge and the district court assumed without deciding. So I'm not sure that they actually... The district court did not find standing. They just assumed without deciding. Moving on to the actual search and seizure. The law enforcement conducted the traffic stop, a dog sniff of the vehicle, which alerted, which then of course provided probable cause to search the vehicle under Donnelly and then located the lock boxes, which then, with the automobile exception and Ross, it sounds like we're all in agreement, the officer could have searched those lock boxes right there on the side of the road. Unfortunately, Sergeant Wall testified that he did not have the means to access them on the side of the road. And if he had, he would have opened them. He testified that because he couldn't get into them on the side of the road and because it was getting dark, he arrested appellant, towed the vehicle, and brought the lock boxes back to the sheriff's department in order to access them. It seems like appellant's argument here is because Sergeant Wall took the lock boxes and put them in the squad car to transfer them back to the sheriff's department, rather than putting them back into the suspect vehicle, we now are taking this outside of the automobile exception. And that seems to be an unreasonable conclusion. If law enforcement had probable cause to search the lock boxes on the side of the road, there is nothing that would have prevented them from searching them at the station. And in fact, instead of just searching them when he got back to the station, Sergeant Wall set them out, did another canine sniff, obtained additional probable cause, and then got a search warrant. So instead of just searching them, law enforcement provided appellant with more constitutional protection than was required. The Constitution protects against unreasonable searches. There was nothing unreasonable in what Sergeant Wall did in this case, and appellant hasn't pointed to anything unreasonable. Moving on to the juror issue. The juror indicated that she had had some communication with Officer Bunch, who was a 404B witness, over the course of approximately nine months, and had been more than three years earlier. She indicated that she had no concern with her ability to be fair and impartial to both sides when questioned. She indicated that she would wait and listen to Officer Bunch's testimony before making up her mind about the case. And actually, Judge Jarvie did ask the parties if they would like to present any questions, and I do believe on page four of the transcript, the defense did present one question for the juror, and that was whether she had ever been called as a witness in any cases for which she had provided a tip, and the answer was no. That was the only question presented by the parties to the juror. And so after stating that she could be fair and impartial to both sides, she was excused. She stated she could be fair and impartial to both sides, and given that the standard in this case is actual partiality, appellant has not demonstrated actual partiality. Instead, appellant would like to change the precedent from presuming impartiality to presuming partiality, and that is not reasonable. So there was no abuse of discretion in this case in denying appellant's strike for cause. Though it does seem a little unfair to come up a little bit, you know, after it's all done and you've already exercised your peremptories, because this is one certainly, if I were defense counsel, I'd be exercising my peremptory on this person. It does seem a little unfair that this came up after the peremptories were done. It's certainly unusual, Your Honor. I'll grant you that, due to the sort of the posture of the case, the fact that there was a day off and it came up after the fact. I'm not sure, in a vacuum, you would certainly say you may exercise a strike on that, on her. However, in comparison to all the other jurors, and I'm not sure that you can necessarily say for sure a peremptory would have been exercised, because, as we all know, you have to compare every juror to the other ones on the panel. So in a vacuum, sure, you would say I'd use a strike on her. But in the moment, comparatively, I'm not sure that that decision or that statement can be made. And given the standard of review, the abuse of discretion, it is the government's position that it was not an abuse of discretion in this case. I don't understand that answer. Are you saying it's relevant whether she would have stricken her with a peremptory challenge? No, Your Honor. I was just merely— You just gave a long argument why we don't know that she would have, as though if she would have, it was important. I'm sorry. I didn't hear you. Can you say that again? Is it relevant whether she would have used it a peremptory challenge? No, Your Honor. Okay. Okay. And finally, the motion in limine regarding the— Well, let's follow up on one thing. The defense made the alternative argument that at least, if nothing else, at least make her the alternate. I assume your argument is the same, that it's abuse of discretion not to take that, and obviously the government didn't join in that motion. But, I mean, that would have been at least a way to solve— maybe potentially solve the problem. Your Honor is correct. That is an abuse of discretion there for the district court. I found the case United States versus— I don't know that I'm going to pronounce this correctly. I'm just going to spell it. G-I-A-N-A-K-O-S-415-F-3-9-12. The district court has the discretion to substitute an alternate. And so certainly the district court could have done that if it chose. But being an abuse of discretion standard, and again, given that the standard for the juror at issue is actual partiality in this case, it is the government's position that neither of those were an abuse of discretion, Your Honor. Well, let's go back to this peremptory question again, because why do you say it's not relevant? I mean, so if she can show that the information that came out later clearly would have led her to make a peremptory strike, why isn't that relevant? Your Honor, I don't believe that you can say with certainty that the information that came out later would have led to a peremptory strike because— I know, but now you're arguing with the premise of my question, but I'm saying if she could show that, why isn't that relevant? Because that's not the standard, Your Honor. The standard is actual partiality and a resistance to rehabilitation. Yeah. Well, why should that be the standard in a case like this where information comes out late that would have supported a peremptory strike? Because, Your Honor, otherwise there would be second-guessing occurring much more frequently, and I don't want to second-guess the premise of your question, but I just don't know how one would prove that either side would use a peremptory strike. And so it would just be a lot of second-guessing. And so I believe that the standard needs to be whether the juror can be impartial or not, not whether a party would use a peremptory strike or not. Just curious. During voir dire, were there questions about contact with law enforcement and contact maybe with drug in the neighborhood kind of questions, and was that juror silent on those? There were those questions, Your Honor. And, in fact, my colleague who was handling this on the morning of, you can see in the transcript, stated that other people were answering those questions, and she did not answer. We don't have a transcript of voir dire. However, my colleague's response was she was not, I don't know that she was answering those questions, or she didn't have hesitation in saying she could be fair. However, she did indicate, is my understanding, she indicated she thought she recognized a name, but there were certainly the questions of do you know law enforcement, is anyone in your family or close friends related to law enforcement, or have you been involved? Those were certainly questions during voir dire. Did she answer those questions? I don't recall that, Your Honor. We don't have a transcript. Thank you. I'll move briefly to the motion in limine issue, Your Honors. First of all, I'm not certain that this issue is sufficiently preserved for your review, given that the entire audio, I don't know if that has been preserved for you to review the entirety or the portion. That appellant was moving to admit. I think you may only have the clip that was admitted in evidence. However, there was nothing proffered by appellant that explained the government's portion, and it was purely self-serving hearsay. It didn't place anything into context. The district court, in asking during the hearing what part of this explains the government's portion, what places it into context, none of that was able to be explained. The district court stated that it had listened to the entire audio clip and nothing within the entire thing explained the government's portion. It was not an abuse of discretion to deny appellant's motion. For all of these reasons, the government would respectfully request that this court affirm appellant's conviction and sentence. Thank you. Thank you for your argument. All right, we'll hear rebuttal, Ms. Arguas. Thank you, Your Honor. Starting with the suppression issue, in terms of standing as to packages, I don't know that place or its progeny really explore this issue in detail of claiming ownership of the packages, because certainly it would put defendant in a terrible position to say, I mean, in place, they did find narcotics in the bags, even though his conviction was overturned. So it would be a difficult position for Mr. Place to say, yes, these are my bags, in order to have standing, but then losing an emotion to suppress and then subject to full criminal liability for what's in those bags. But we do argue that under Byrd, our client did have standing to contest the search and seizure of anything found within the vehicle. The government stated that this officer could not open these containers on the side of the road. He should have gotten a warrant. He takes the containers, he moves them outside of the realm of the traffic stop. That's the whole point of why we're here. The government concedes there was a second canine sniff. This wasn't even filmed on body camera. It happened hours after the traffic stop. This is a search of constitutional concern. The government is stretching the Carroll Doctrine beyond traffic stops. Certainly in place, presumably he arrives at the airport in a car. He takes his luggage through security. There's no finding that because he conceded to whatever security existed decades ago when that case was decided, that then he conceded to the search of his luggage or the seizure because he was at an airport, or that because he traveled to the airport in a car, then his containers were tied to the car. At some point, we leave the automobile doctrine, which is designed to protect. That warrant exception is designed because automobiles are mobile, and we move into the place doctrine. I thought Ms. Schneider said the officer did get a warrant for the lock boxes. He does eventually. We contest that the second dog sniff, that seizing the containers, is problematic under the Fourth Amendment, and the second dog sniff, that that search is problematic. Why is the sniff a search at all? The courts recognize that some dog sniffs can be searches of constitutional concern. In this case, the dog sniff happens in a locked sheriff's office holding facility where the containers have been placed. Do you think that they would not have had probable cause without the dog sniff? I don't know. But I think that we, the officer should have asked for a warrant. These containers have been separated from the traffic stop at this point. Well, he did get a warrant. But the additional seizure of the packages and the second dog sniff are what we're arguing is problematic here. What's your best case that a dog sniff is a search? It's cited in our briefing. We touch on that dog sniffs can be of constitutional concern. I'm not asking if it's a concern. I'm asking if it's a search. My understanding was that the law is that if the dog is just sniffing the air around the outside of a container, it's not a search. Now, if the dog tears open the box or something, that would be different. But this case was just the dog outside the locked containers, as I understand it. That's what we're told. There's no camera footage. That's what I mean. That's the record. All right. Well, thank you for your argument. Thank you.